**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MATTHEW NUTTER, et al.,

        Plaintiffs,

v.                                         CIVIL ACTION NO.  2:19-cv-00787

ROSS H. MELLINGER, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) filed by defendants, Allyson Fields and the Housing Authority of the County of Jackson (the "Housing Authority"). [ECF No. 11]. Plaintiffs, Matthew Nutter and Carrie Barnette, have not responded and the time period to do so has elapsed. For the reasons that follow, the Motion is **GRANTED** on all counts.

## I.      Background

This lawsuit arose out of events that took place during an eviction at the Rolling Meadow Village Housing Complex (the "Housing Complex"). Defendant, the Housing Authority, is a private non-profit organization that owns and operates the Housing Complex. Defendant, Allyson Fields, works as the Public Housing Administrator for the Housing Authority. Plaintiff, Carrie Barnette, resided at the Housing Complex. On or about February 25, 2019, plaintiff Barnette received a notice to vacate her apartment from the Housing Authority. Pls.' Compl. ¶ 10, [ECF No. 1].

Plaintiffs allege that on or about April 5, 2019, defendants, Chief Deputy Ross Mellinger, Deputy L. M. Casto, Deputy B.A. DeWees, and Deputy S.C. Fisher, were present at the Housing Complex in the course of their employment with the Jackson County, West Virginia Sheriff's Department answering a disturbance call. *Id.* at ¶ 12. Defendant Fields requested the Deputy Sheriffs assist with the eviction of plaintiff Barnette. *Id.* at ¶ 12.

Plaintiffs allege that the defendant Deputy Sheriffs and defendant Fields subsequently entered plaintiff Barnette's residence. *Id.* at ¶ 13. At that time, plaintiff Matthew Nutter, who was present at plaintiff Barnette's apartment to assist with moving, was asleep on the couch. *Id.* at ¶ 10, ¶ 13. Plaintiffs further allege that "some or all of the defendant Deputy Sheriffs pulled the plaintiff Nutter off the couch while he was still asleep and… proceeded to attack plaintiff Nutter, using deadly and excessive force, and tazed [sic] him on multiple occasions." *Id.* at ¶ 14. The Deputy Sheriffs then placed plaintiff Nutter in handcuffs and dragged him outside, where they proceeded to tear off his cloths and continue to beat him. *Id.* at ¶ 14. Plaintiff Nutter claims he suffered "head and facial injuries and other injuries" from the incident. *Id.* The Complaint maintains that throughout this alleged assault, plaintiff Nutter was compliant, did not provoke the Sheriffs, did not defend himself with force, and did not attempt to flee. *Id.* at ¶ 13–14. The police then charged plaintiff Nutter with four counts of "battery on a police officer," four counts of "obstruction," and "simple possession." *Id.* at 19. Plaintiff Nutter subsequently entered a plea to one count of obstruction, resulting in the dismissal of all remaining charges. *Id.*

The Complaint also alleges that, while in plaintiff Barnette's apartment, defendant Deputy Mellinger "attacked" her, "throwing her across the room against the wall and stomping on her feet which had recently undergone surgery." *Id.* at ¶ 16. Plaintiffs claim that throughout the incident, plaintiff Barnette did not pose a threat, did not provoke defendants Deputy Sheriffs, and was

compliant. *Id.* at 17. Plaintiff Barnette alleges that the attack resulted in "physical injuries, pain and suffering, emotional injuries, and [that she] suffered otherwise." *Id.* at ¶ 16. Plaintiffs also claim that "at no time from February 25, 2019 up to and including April 5, 2019 did the Housing Authority commence eviction or wrongful occupation proceedings against Plaintiff Barnette." *Id.* at ¶ 11. And that the defendant Deputy Sheriffs and defendant Fields did not have a court order when they entered Ms. Barnette's residence on April 5, 2019. *Id.* at ¶ 12.

Plaintiffs brought this lawsuit against all Deputy Sheriffs present during the incident, the Jackson County Commission (the political subdivision of the State of West Virginia that governs the Jackson County Sheriff's Department), Allyson Fields in her individual and official capacity as the Public Housing Administrator of the Housing Authority, and the Housing Authority. Plaintiffs allege the following claims presumably against all defendants: Constitutional Tort (State Law – Count I ); Negligence (State Law – Count II ); Battery (State Law – Count III); Outrageous Conduct and Intentional Infliction (State Law – Count IV); Excessive Force and Illegal Seizure under 42 U.S.C. § 1983 (Federal Law – Count I ); Supervisory Liability under 42 U.S.C. § 1983 (Federal Law – Count II); and Unlawful Conspiracy under 42 U.S.C. § 1983 & 1985 (Federal Law – Count III). Defendants, Ms. Fields and the Housing Authority, filed a Motion to Dismiss all charges against them. [ECF No. 11].

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the Complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones*

*in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at \*1 (S.D.W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

To survive a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6), plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the Complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). Thus, "a Complaint is to be construed liberally so as to do substantial justice." *Id.*

III. **Discussion**

a. **Federal Law Claims**

1. **Excessive Force and Illegal Seizure under 42 U.S.C. § 1983 (Federal Law Claims – Count I)**

I find the Complaint is deficient in two ways. First, plaintiffs have not plead any facts to plausibly allege state action, as required by 42 U.S.C. § 1983. And Second, even if state action existed, plaintiffs have not plead facts that tie the conduct of the Housing Authority or defendant Fields to the use of force.

First, I must determine whether the actions of the Housing Authority and defendant Fields constitute state action. I find that plaintiffs have not plead any facts to plausibly demonstrate state action regarding these two defendants. To raise a claim under 42 U.S.C. § 1983, a plaintiff must allege the "violation of right secured by the Constitution or laws of the United States and must

show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To act under color of state law a defendant must be "clothed with the authority of state law." *West*, 487 U.S. at 49. "The color of law requirement excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

Actions by a private party can satisfy the state action requirement in limited circumstances when "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (U.S. 1982). The Fourth Circuit has found four circumstances in which a close nexus between the state and challenged action exists:

> (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

*DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999).

Finding state action in the context of a private organization's involvement with public housing vouchers is complicated and fact specific. *See Swann v. Gastonia Housing Authority*, 675 F.2d 1342, 1345 (4th Cir. 1982). In *Swann*, the Fourth Circuit found that the eviction of the plaintiffs from Section 8 housing, which was managed by a private organization, was state action. *Id.* The court reasoned that there was "substantial continuing agency involvement in the tenancy" because the Section 8 Existing Housing Program required that the landlord send the "notice to vacate to the tenant and a copy to the agency for its approval." *Id.* at 1344–45. However, the Fifth Circuit refused to find state action where the plaintiffs sued a private organization, who evicted

the plaintiffs from the Section 8 new construction housing complex it managed. *Miller v. Hartwood Apartments, Ltd.*, 689 F.2d 1239, 1240 (5th Cir. 1982). The court reasoned that the actions of the private party were not under the color of law because lessors in Section 8 new construction programs, unlike Existing Housing programs, have "sole responsibility for all ownership, management, and maintenance responsibilities, including the selection of tenants and determination of tenancy." *Id.* at 1243–1244.

In this case, plaintiffs have failed to allege any facts that suggest that the Housing Authority and defendant Fields acted "under the color of law." The Housing Authority is a private non-profit organization. The Complaint alleges that the Housing Authority "owns/operates and/or maintains the Rolling Meadows Village Housing." Pls.' Compl. ¶ 9, [ECF No. 1]. The Complaint alleges that defendant Fields is the "Public Housing Administrator" for the Housing Authority. *Id.* at ¶ 8. The Complaint does not allege any facts that speak to the type of public housing program that governs the Housing Complex. Nor does it include facts that plausibly demonstrate that the Housing Authority performs a public function, traditionally and exclusively performed by the state. Most importantly, plaintiffs in this case are not challenging the legality of plaintiff Barnette's eviction under the Constitution. Rather, all of plaintiffs' claims appear to stem from the defendant Deputy Sheriffs' alleged physical attack on plaintiffs. Plaintiffs do not include any facts that would suggest that a private non-profit that administers public housing vouchers alleged involvement in a physical attack qualifies as state action.

Second, I find it prudent to draw attention to other frustrating deficiencies in plaintiffs' Complaint on this Count. Plaintiffs' Complaint appears to plead multiple claims incorrectly against the wrong defendants. In Count I, claiming Excessive Force under § 1983, plaintiffs appear to treat the Housing Authority as operating as a state agency. If the Housing Authority was a state agency,

then sovereign immunity under the Eleventh Amendment would prevent recovery for damages against it. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011) (*citing Hans v. Louisiana*, 134 U.S. 1, 10 (1890). Sovereign immunity would also prevent recovery for damages against defendant Fields in her official capacity. *Virginia Office for Prot. & Advocacy*, 563 U.S. at 253. Plaintiffs simultaneously appear to treat the Housing Authority as a municipality, given their claim in Count II for supervisory liability pursuant to the theory of liability established in *Monell v. Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011).

Furthermore, even if this court could somehow find that defendant Fields acted "under the color of law," the Complaint lacks facts that tie her conduct to the use of force. The Fourth Amendment provides that people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend, IV. Here, the extent of defendant Fields's actions alleged in the Complaint are that she, acting in the scope of her employment with the Housing Authority, requested defendant Deputy Sheriffs assist with an eviction and that she accompanied the Deputy Sheriffs to plaintiff Barnette's apartment. Pls.' Compl. ¶ 12, 13, [ECF No. 1]. The Complaint does not allege that Ms. Fields made physical contact with plaintiffs or that she assisted the Sheriffs' in their alleged use of force. Nor does the Complaint allege any facts that defendant Fields entered the residence unlawfully or seized anything from the apartment.

Plaintiffs simply have not alleged facts that plausibly show that the Housing Authority and ergo its employee, Ms. Fields, acted under the color of law. Nor have plaintiffs plausibly tied these defendants' actions to the use of force. Therefore, plaintiffs have failed to state a claim for Excessive Force and Illegal Seizure under 42 U.S.C. § 1983 against the Housing Authority and defendant Fields. The Motion to Dismiss is thus **GRANTED** on Federal Law Claims – Count I.

### 2. *Monell* and Supervisory Liability under 42 U.S.C. § 1983 (Federal Law Claims – Count II)[1]

I find that plaintiffs have not sufficiently plead facts to state a plausible *Monell* Supervisory Liability claim under 42 U.S.C. § 1983 against the Housing Authority and/or defendant Fields. As previously stated, a claim under 42 U.S.C. § 1983 requires state action. *West*, 487 U.S. at 48; *see also Monell*, 436 U.S. at 690–91. The theory of liability set forth in *Monell* provides for a § 1983 claim against local governments when their formal policies or customs result in constitutional deprivations. *Id.* A formal policy or custom of a municipality can include a failure to train or screen employees. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But municipal liability under § 1983 cannot be based on a theory of respondeat superior. *Id.*; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989). The municipality's failure to train must amount to deliberate indifference toward the constitutional rights at stake. *City of Canton, Ohio*, 489 U.S. at 379.

Here, the Complaint does not allege facts sufficient to plausibly find that the Housing Authority and/or defendant Fields operated as local government, "under the color of law." Additionally, once again even if plaintiffs had sufficiently plead that the Housing Authority operated as part of the municipality, the Complaint does not include facts that indicate that the Housing Authority failed to adequately train or supervise defendant Fields or any constitutional violation that resulted from such an alleged failure. Therefore, the Motion to Dismiss is **GRANTED** on Federal Law Claims – Count II.

---

[1] Plaintiffs' Complaint brings Count II under "24 U.S.C. 1983." Pls.'s Compl. [ECF No. 1]. The court finds it prudent to note that "24 U.S.C. 1983" is not an existing statute. The court construes the Complaint to mean 42 U.S.C. § 1983.

### 3. Unlawful Conspiracy under 42 U.S.C. §§ 1983 & 1985 (Federal Law Claims – Count III)

Plaintiffs fail to state a plausible claim for unlawful conspiracy. As previously established, plaintiffs have failed to state a claim for a §1983 claim because they have not shown that these defendants acted "under the color of law." Therefore, plaintiffs cannot demonstrate a claim for unlawful conspiracy under § 1983.

Unlike § 1983, § 1985 does not require state action and can be brought against purely private actors. To demonstrate conspiracy under § 1985, a plaintiff must prove

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Unus v. Kane*, 565 F.3d 103, 126 (4th Cir. 2009). "Moreover, the law is well settled that to prove a section 1985 conspiracy, a claimant must show an agreement or a meeting of the mind" by defendants to violate the claimant's constitutional rights *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995).

Here, plaintiffs' allegations amount to merely conclusory assertions that "[d]efendants unlawfully conspired with each other to deprive the [p]laintiffs of their constitutionally protected rights" and that "[s]aid defendants' actions were objectively unreasonable." Pls.' Compl. ¶¶ 42, 43, [ECF No. 1]. Most obviously, the Complaint does not allege facts that either plaintiff belongs to a specific protected class or that class-based discriminatory animus was the root of the alleged constitutional deprivations. Nor does the Complaint allege facts that plausibly demonstrate defendant Fields, or any other Housing Authority personnel, were motivated by "invidiously discriminatory animus." Moreover, defendant Field's request that defendant Deputy Sheriffs assist

her with an eviction does not plausibly amount to an agreement to "deprive the plaintiff[s] of the equal enjoyment of rights secured by the law to all." Therefore, the Motion to Dismiss is **GRANTED** on Federal Law Claims – Count III.

### b. State Law Claims

#### 1. Constitutional Tort (State Law Claims – Count I)

Plaintiffs allege that their constitutional rights were violated under Article III, §§ 6, 10, and 17 of the West Virginia Constitution. Pls.' Compl. ¶ 23, [ECF No. 1]; W. Va. Const. art. III, §§ 6, 10, 17. Article III, § 6 of the West Virginia Constitution incorporates the Fourth Amendment of the United States Constitution and protects citizens against unreasonable searches and seizures. W. Va. Const. art. III, § 6. Article III, § 10 of the West Virginia Constitution incorporates the Fourteenth Amendment of the United States Constitution and protects against the deprivation of life, liberty, or property, without the due process of law. *Id.* at § 10. Article III, § 17 of the West Virginia Constitution provides that the courts should be open to all persons and protects access to the courts. *Id.* at § 17; *See Toth v. Bd. of Parks & Rec. Comm'rs*, 593 S.E.2d 576, 580 (W. Va. 2003).

As previously explained, the Complaint has not plausibly alleged that the actions of the Housing Authority or defendant Fields qualify as state action. Article III, §§ 6, 10, and 17 of the West Virginia Constitution each require state action. *See e.g.*, *United States v. Ellyson*, 326 F.3d 522, 527 (4th Cir. 2003) (holding that the Fourth Amendment is aimed "exclusively at state action"); *Simkins v. Moses H. Cone Memorial Hospital*, 323 F.2d 959, 966 (4th Cir.1963) (holding that private conduct cannot trigger a Fourteenth Amendment violation); *Kyriazis v. Univ. of W. Virginia*, 450 S.E.2d 649, 656 (W. Va. 1994) (noting that state action is required to raise a claim for a violation of Article III, § 17 of the West Virginia Constitution). Thus, plaintiffs in this case

have summarily failed to state a claim for a constitutional tort under the West Virginia Constitution against the Housing Authority and defendant Fields.

### 2. Negligence (State Law Claims – Count II)

Plaintiffs claim that "[d]efendants failed to exercise reasonable care in hiring, retention and/or supervision of their employees." Pls.' Compl. ¶ 27, [ECF No. 1]. The West Virginia Supreme Court of Appeals applies the following inquiry to these types of negligence claims:

> When the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background visa vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*Perdue v. City of Charleston*, No. 2:11-cv-01011, 2012 U.S. Dist. LEXIS 87492, *10 (S.D.W.V. June 25, 2012) (*citing State ex rel. W. Va. State Police v. Taylor*, 499 S.E.2d 283, 289, n. 7 (W. Va. 1997). "Though plaintiffs are not expected to provide detailed factual allegations, a well pled Complaint must be 'more than an unadorned, the-defendant-unlawfully-harmed-me' accusation." *Perdue*, 2012 U.S. Dist. LEXIS 87492 at *10 (granting a motion to dismiss a claim of negligent hiring, retention, training, and supervision because the Complaint simply stated a legal conclusion of liability). Reviewing the entirety of the Complaint in this case, plaintiffs have failed to state any facts or make any allegations that speak to the Housing Authority's hiring or retention of defendant Fields. Moreover, there are no allegations that the Housing Authority was on notice of any issues with defendant Fields. Plaintiffs have thus failed to state a claim for negligence upon which relief can be granted. Therefore, the Motion to Dismiss is **GRANTED** on State Law Claim – Count II.

### 3. Battery (State Claim – Count III)

Plaintiffs allege that the "actions of the defendants constitute battery." Pls.' Compl. ¶ 29, [ECF No. 1]. In West Virginia, a battery occurs when there is an unlawful "physical contact of an

insulting or provoking nature to the person of another . . . ." W. Va. Code § 61-2-9. Reviewing the

Complaint in its entirety, there are no allegations pled against the Housing Authority or defendant

Fields that they made any physical contact with either plaintiff. The Motion to Dismiss is therefore

**GRANTED** on State Law Claim – Count III.

### 4. Outrageous Conduct and Intentional Infliction (State Law Claims – Count IV)

Plaintiffs allege an Intentional Infliction claim against "defendants."  Pls.' Compl. ¶ 32,

[ECF No. 1]. Under West Virginia law, raising a claim for intentional infliction of emotional

distress requires the plaintiff prove the following four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so
> extreme and outrageous as to exceed the bounds of decency; (2) that
> the defendant acted with the intent to inflict emotional distress, or
> acted recklessly when it was certain or substantially certain
> emotional distress would result from his conduct; (3) that the actions
> of the defendant caused the plaintiff to suffer emotional distress; and
> (4) that the emotional distress suffered by the plaintiff was so severe
> that no reasonable person could be expected to endure it.

*Philyaw v. E. Associated Coal Corp.*, 633 S.E.2d 8, 13 (W. Va. 2006).  This tort necessitates that

defendant's conduct be more than "unreasonable, unkind or unfair, it must truly offend community

notions of acceptable conduct." *Id.* In this case, there are no facts plead in the Complaint that any

Housing Authority personnel, including defendant Fields, did anything but communicate with the

defendant Deputy Sheriffs about a request for assistance with an eviction. Even assuming the facts

alleged against the Housing Authority and defendant Fields are true, they do not rise to conduct

that is so extreme and outrageous as to exceed the bounds of decency. The Motion to Dismiss is

therefore **GRANTED** on State Law Claim – Count IV.

## IV.  Conclusion

The Motion to Dismiss [ECF No. 11] filed by defendants, the Housing Authority and Allyson Fields, is **GRANTED** on all claims. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        January 13, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE