# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

MATTHEW NUTTER, et al.,

    Plaintiffs,

v.                                                  CIVIL ACTION NO. 2:19-cv-00787

ROSS H. MELLINGER, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion to Dismiss certain claims pursuant to Fed. R. Civ. Pro. 12(b)(6) filed by defendants: Ross Mellinger in his individual and official capacity as Chief Deputy Sheriff; L. M. Casto in his individual and official capacity as a Deputy Sheriff; S.C. Fisher in his individual and official capacity as a Deputy Sheriff; B. A. DeWees in his individual and official capacity as a Deputy Sheriff; Tony Boggs in his individual and official capacity as the Sheriff; and the Jackson County Commission of the State of West Virginia (the "Jackson County Commission") as the body politic governing the Jackson County Sheriff's Department. [ECF No. 11]. Plaintiffs, Matthew Nutter and Carrie Barnette, have not responded and the time period to do so has elapsed. For the reasons that follow, the Motion is **GRANTED in part and DENIED in part**.

I.     **Background**

This lawsuit arose out of events that took place during an eviction at the Rolling Meadow Village Housing Complex (the "Housing Complex"). Defendant, the Housing Authority, is a private non-profit organization that owns and operates the Housing Complex. Defendant, Allyson

Fields, works as the Public Housing Administrator for the Housing Authority. Plaintiff, Carrie Barnette, resided at the Housing Complex. On or about February 25, 2019, plaintiff Barnette received a notice to vacate her apartment from the Housing Authority. Pls.' Compl. ¶ 10 [ECF No. 1].

Plaintiffs allege that on or about April 5, 2019, defendants, Chief Deputy Ross Mellinger, Deputy L. M. Casto, Deputy B.A. DeWees, and Deputy S.C. Fisher, were present at the Housing Complex in the course of their employment with the Jackson County West Virginia Sheriff's Department answering a disturbance call. *Id.* at ¶ 12. Defendant Fields requested that the Deputy Sheriffs assist with the eviction of plaintiff Barnette. *Id.* at ¶ 12.

Plaintiffs allege that defendant Deputy Sheriffs and defendant Fields subsequently entered plaintiff Barnette's residence. *Id.* at ¶ 13. At that time, plaintiff Matthew Nutter, who was present at plaintiff Barnette's apartment to assist with moving, was asleep on the couch. *Id.* at ¶ 10, ¶ 13. Plaintiffs further allege that "some or all of the defendant Deputy Sheriffs pulled the plaintiff Nutter off the couch while he was still asleep and… proceeded to attack plaintiff Nutter, using deadly and excessive force, and tazed [sic] him on multiple occasions." *Id.* at ¶ 14. The Deputy Sheriffs then placed plaintiff Nutter in handcuffs and dragged him outside, where they proceeded to tear off his cloths and continued to beat him. *Id.* at ¶ 14. Plaintiff Nutter claims he suffered "head and facial injuries and other injuries" from the incident. *Id.* The Complaint avers that throughout this alleged assault, plaintiff Nutter was compliant, did not provoke the Sheriffs, did not defend himself with force, and did not attempt to flee. *Id.* at ¶ 13–14. The police then charged plaintiff Nutter with four counts of "battery on a police officer," four counts of "obstruction," and "simple

possession." *Id.* at 19. Plaintiff Nutter subsequently entered a plea to one count of obstruction, resulting in the dismissal of all remaining charges. *Id.*

The Complaint also alleges that, while in plaintiff Barnette's apartment, defendant Deputy Mellinger "attacked" her, "throwing her across the room against the wall and stomping on her feet which had recently undergone surgery." *Id.* at ¶ 16. Plaintiffs claim that throughout the incident, plaintiff Barnette did not pose a threat, did not provoke defendant Deputy Sheriffs, and was compliant. *Id.* at 17. Plaintiff Barnette alleges that the attack resulted in "physical injuries, pain and suffering, emotional injuries, and [that she] suffered otherwise." *Id.* at ¶ 16. Plaintiffs also claim that "at no time from February 25, 2019 up to and including April 5, 2019 did the Housing Authority commence eviction or wrongful occupation proceedings against Plaintiff Barnette." *Id.* at ¶ 11. Plaintiffs further alleged that defendant Deputy Sheriffs and defendant Fields did not have a court order when they entered Ms. Barnette's residence on April 5, 2019. *Id.* at ¶ 12.

Plaintiffs brought this lawsuit against all Deputy Sheriffs present during the incident, Tony Boggs (the Sheriff of Jackson County), the Jackson County Commission (the political subdivision of the State of West Virginia that governs the Jackson County Sheriff's Department), Allyson Fields in her individual and official capacity as the Public Housing Administrator of the Housing Authority, and the Housing Authority. Plaintiffs allege the following claims presumably against all defendants: Constitutional Tort (State Law – Count I ); Negligence (State Law – Count II ); Battery (State Law – Count III); Outrageous Conduct and Intentional Infliction (State Law – Count IV); Excessive Force and Illegal Seizure under 42 U.S.C. § 1983 (Federal Law – Count I ); Supervisory Liability under 42 U.S.C. § 1983 (Federal Law – Count II); and Unlawful Conspiracy under 42 U.S.C. § 1983 & 1985 (Federal Law – Count III). On January 13, 2020, I granted the

Motion to Dismiss [ECF No. 11] filed by defendants, the Housing Authority and Allyson Fields, on all counts. [ECF No. 15].

The Motion to Dismiss [ECF No. 9] currently pending before the court requests the court dismiss the following: (1) all claims against defendant Deputies and the Sheriff in their official capacities; (2) all claims against the Jackson County Sheriff's Department; (3) *Monell* and Supervisory Liability claims brought pursuant to 42 U.S.C. § 1983 (Federal Law Claims – Count II); (4) Unlawful Conspiracy claims brough pursuant to 42 U.S.C. §§ 1983 and 1985 (Federal Law Claims – Count III); (5) Constitutional Tort claims (State Law Claims – Count I); and (6) Negligence claims against defendant Deputies Casto, Fisher, DeWees, and Mellinger (State Law Claims – Count II). Defs.' Mot. to Dismiss 2 [ECF No. 9].

**II.     Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the Complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D.W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

To survive a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6), plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell*

4

*Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the Complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). Thus, "a Complaint is to be construed liberally so as to do substantial justice." *Id.*

### III. Discussion

#### a. Federal Law Claims

First, I will address issues regarding which parties can be sued and for which types of claims. Defendants ask the court to dismiss all federal law claims against the Jackson County Sheriff's Department because it is not a legal entity that can sue and be sued. Defs.' Mem. in Supp. of Mot. to Dismiss 6 [ECF No. 10]. Defendants would surely be correct if the Jackson County Sheriff's Department was a named party. *See Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989); *see also Terlosky v. Matthews*, No. 5:11CV26, 2011 WL 1302238, at *2 (N.D.W. Va. Mar. 31, 2011) (finding the Marshall County Sheriff's Department has no status independent of the Sheriff in his official capacity which would permit that office to sue and be sued); *Rankin v. Berkeley Cty. Sheriff's Dep't*, 222 F. Supp. 2d 802, 807 (N.D.W. Va. 2002) (granting a motion to dismiss plaintiff's claims brought pursuant to § 1983 against the Berkeley County Sheriff's Department because the Department is not a cognizable legal entity). However, plaintiffs did not name the Jackson County Sheriff's Department as a party. Plaintiffs sue the "Jackson County Commission," which the Complaint describes as "a body politic existing under the statute and laws of the State of West Virginia" that governs "the Jackson County Sheriff's Department, a subdivision thereof." Pls.' Compl. ¶ 7 [ECF No. 1]. I construe the Complaint to sue

the Jackson County Commission as a named defendant. And I do not read the Complaint to name the Jackson County Sheriff's Department proper as a defendant in this case. Therefore, defendants' requests to dismiss claims made against the Jackson County Sheriff's Department are **DENIED**.

Plaintiffs' claims against defendant Deputies and defendant Sheriff Boggs in their official capacities are duplicative with the claims against the Jackson County Commission, the municipality. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "Official-capacity suits, in contrast [to personal-capacity suits], generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.*; *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 (1989)("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Therefore, I treat defendant Deputies in their official capacities, defendant Sheriff Boggs in his official capacity, and the Jackson County Commission as one defendant.

### (1) *Monell* and Supervisory Liability under 42 U.S.C. § 1983[1] (Federal Law Claims – Count II)

Defendants request the court dismiss claims made against the Jackson County Commission pursuant to 42 U.S.C. § 1983. The theory of liability set forth in *Monell* provides for a § 1983 claim against local governments when their formal policies or customs result in constitutional deprivations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipal custom refers to relevant practices so widespread as to have the force of law, though not formally approved by a legislative body. *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). A custom can

---

[1] Plaintiffs' Complaint brings Count II under "24 U.S.C. 1983." Pls.'s Compl. [ECF No. 1]. The court finds it prudent to note that "24 U.S.C. 1983" is not an existing statute. The court construes the Complaint to mean 42 U.S.C. § 1983.

include a municipality's failure to hire, train, supervise, and disciplines its employees. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Brown*, 520 U.S. at 415. But municipal liability under § 1983 cannot be based on a theory of respondeat superior. *Id.*; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989). The municipality's failure to hire, train, supervise, or discipline must amount to deliberate indifference toward the constitutional rights at stake. *City of Canton, Ohio*, 489 U.S. at 379. And plaintiffs must demonstrate that the deliberate indifference *caused* the violation of their constitutional rights. *See id.* In this case, plaintiffs allege supervisory liability against the Jackson County Commission on four bases: failure to adequately hire, train, supervise, and discipline "its police officers regarding circumstances which constitute excessive force." Pls.' Compl. ¶ 39 [ECF No. 1].

To bring a failure to adequately hire claim, the plaintiff must demonstrate that the municipality's hiring process would lead a "reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire [an] applicant" would likely be the "deprivation of a third party's federally protected right." *Brown*, 520 U.S. at 403 (1997). In the context of excessive force, the Supreme Court has held that a finding of municipal culpability "must depend on a finding that the officer [who used the excessive force] was highly likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* at 412.

In this case, the Complaint fails to plead any facts regarding the Jackson County Commission's hiring process regarding its police officers. The Complaint does not allege any red flags, let alone plainly obvious ones, in the background of any of the specific defendant Deputies who allegedly conducted an illegal search or used excessive force against plaintiffs. The Complaint

7

merely proffers "defendant Mellinger and the other defendant deputies have a pattern and practice of inflict[ing] excessive force and physical pain upon suspects… [which is] known to the Sheriff's Department." Pls.'s Compl. ¶ 20 [ECF No. 1]. This allegation amounts to a legal conclusion. Under the modern pleading standard, legal conclusions are insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

To bring a failure to train claim against a local government, plaintiffs must demonstrate that taking into account the duties assigned to specific officers, "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio*, 489 U.S. 378, 390 (1989). Demonstrating a pattern of similar constitutional violations is one way for a plaintiff to show obvious need of more or different training. *See id.*; *see also Lytle v. Doyle*, 326 F.3d 463, 474 (4th Cir. 2003). Plaintiffs must also plead causation. Simply establishing "that a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city." *Id.* Plaintiffs must show that the unsatisfactory training resulted in the constitutional injury at-issue. *See id.*

Here, plaintiffs have failed to adequately plead a failure to train claim. The Complaint fails to include any facts about defendant Deputies' training program. It does not state how or why their training is inadequate or how that inadequacy resulted in the use of excessive force or an illegal search against plaintiffs. Moreover, the Complaint does not include any facts to suggest a pattern of unconstitutional uses of force by Jackson County Deputy Sheriffs that would have indicated to official policymakers that there was an obvious need for better or different training.

The Fourth Circuit has identified three elements in analyzing failure to supervise or discipline under *Monell*:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices,; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (citing *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Demonstrating a "pervasive and unreasonable risk" requires evidence that the conduct is "widespread, or at least has been used on several different occasions." *Wilkins*, 751 F.3d at 226. In this case, plaintiffs have not plead specific facts that indicate that defendant Deputies used unconstitutional excessive force on several different occasions, prior to the events at the Housing Complex. Nor have they plead facts that supervisors, such as defendant Sheriff Boggs, knew about any other instances of defendant Deputies using excessive force.

Therefore, Plaintiffs' claims of failure to adequately hire, train, supervise, and discipline employees pursuant to § 1983 against the Jackson County Commission, defendant Deputy Sheriffs in their official capacities, and defendant Sheriff Boggs in his official capacity, are dismissed. And the Motion is **GRANTED** on these claims.

### (2) Unlawful Conspiracy under 42 U.S.C. §§ 1983 and 1985 (Federal Law Claims – Count II)

Defendants treat Unlawful Conspiracy under § 1983 as synonymous with Unlawful Conspiracy under § 1985. But Unlawful Conspiracy under § 1983 covers a broader range of conduct than § 1985, which specifically addresses violations of equal protection under the law.

*See* Michael Finch, *Governmental Conspiracies to Violate Civil Rights: A Theory Reconsidered*, 57 Mont. L. Rev. 1, 16 (1996); *see also United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983). I will therefore address each claim separately.

### i. § 1985

To demonstrate conspiracy under § 1985, a plaintiff must prove,

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Unus v. Kane*, 565 F.3d 103, 126 (4th Cir. 2009). "Moreover, the law is well settled that to prove a section 1985 conspiracy, a claimant must show an agreement or a meeting of the mind" by defendants to violate the claimant's constitutional rights. *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995).

Here, plaintiffs' allegations amount to mere conclusory assertions that "[d]efendants unlawfully conspired with each other to deprive the [p]laintiffs of their constitutionally protected rights" and that "[s]aid defendants' actions were objectively unreasonable." Pls.' Compl. ¶¶ 42, 43, [ECF No. 1]. Most obviously, the Complaint does not allege facts that either plaintiff belongs to a specific protected class or that class-based discriminatory animus was the root of the alleged constitutional deprivations. Thus, plaintiffs failed to state a claim for Unlawful Conspiracy under § 1985.

### ii. § 1983

Under § 1983, "there must be a showing that the defendants conspired or acted jointly or in concert and that some overt act was done in furtherance of the conspiracy, which resulted in

plaintiff being deprived of the constitutional right." *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992). Under the *Iqbal* and *Twombly* pleading standard, parallel conduct and "a bare assertion of conspiracy will not suffice." *Wiggins v. 11 Kew Garden Court*, 497 F. App'x 262, 264 (4th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). Here, the Complaint lacks facts that plausibly create an inference of an agreement between or a meeting of the minds of defendants to deprive plaintiffs of their constitutional rights. Moreover, the Complaint does not specify which defendants conspired together. Instead, the Complaint provides "a bare assertion of conspiracy" through outlining parallel conduct—alleging that some or all of defendant Deputies used unconstitutional excessive force against plaintiffs at the Housing Complex. Pls.' Compl. ¶¶ 14–17. Plaintiffs failed to state a claim for Unlawful Conspiracy under § 1983.

Therefore, the Motion to Dismiss plaintiffs' claims of Unlawful Conspiracy under 42 U.S.C. §§ 1983 and 1985 (Federal Law Claims – Count II) is **GRANTED**.

   b. **State Law Claims**

   (1) **Constitutional Tort (State Law Claims – Count I)**

Plaintiffs allege that their constitutional rights were violated under Article III, §§ 6, 10, and 17 of the West Virginia Constitution. Pls.' Compl. ¶ 23 [ECF No. 1]; W. Va. Const. art. III, §§ 6, 10, 17.

   i. **Article III, § 17**

Article III, § 17 of the West Virginia Constitution provides that the courts should be open to all persons and protects access to the courts. *Id.* at § 17; *See Toth v. Bd. of Parks & Rec. Comm'rs*, 593 S.E.2d 576, 580 (W. Va. 2003). Plaintiffs have not alleged any facts that suggest that defendant Deputies, defendant Sheriff Boggs, or the Jackson County Commission have

11

deprived either of them access to the courts. Therefore, plaintiffs have failed to state a claim under Article III, § 17 of the West Virginia Constitution. The Motion to Dismiss is **GRANTED** as to claims alleged under Article III, § 17 of the West Virginia Constitution.

    **ii.**      **Article III, § 10**

Article III, § 10 of the West Virginia Constitution mirrors the Fourteenth Amendment of the United States Constitution and protects against the deprivation of life, liberty, or property, without the due process of law. *Id.* at § 10. The Supreme Court has held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see also Harper v. C.O. Joseph Barbagallo*, No. 2:14-CV-07529, 2016 WL 5419442, at *13 (S.D.W. Va. Sept. 27, 2016) (granting a motion to dismiss plaintiff's excessive force claims brought under Article III, § 10 of the West Virginia Constitution finding that due process was not the appropriate vehicle); *Krein v. W. Virginia State Police*, No. 2:11-CV-00962, 2012 WL 2470015, at *6 (S.D.W. Va. June 27, 2012) (holding same). Here, the Complaint challenges the constitutionality of defendant Deputies' use of force and ergo the liability for that conduct of the Jackson County Commission and defendant Sheriff Boggs. Due process is thus an inappropriate framework to analyze plaintiffs' claims. The Motion to Dismiss is **GRANTED** as to claims alleged under Article III, § 10 of the West Virginia Constitution.

    **iii.**      **Article III, § 6**

Defendants argue that West Virginia does not recognize a private cause of action for money damages for a violation of Article III, § 6 of the West Virginia Constitution. Defs.' Mem. in Supp.

of Mot. to Dismiss 9 [ECF No. 10]. Article III, § 6 of the West Virginia Constitution parallels the Fourth Amendment of the United States Constitution and protects citizens against unreasonable searches and seizures. W. Va. Const. art. III, § 6. Defendants' cite *Spry v. W. Virginia*, No. 2:16-cv-01785, 2017 WL 440733, at 9 (S.D. W. Va. Feb. 1, 2017) for the proposition that this court has "repeatedly held that claims for money damages are not available to remedy violations of Article III of the West Virginia Constitution." *Id.* at 10 (quoting *Spry*, 2017 WL 440733, at 9). However, defendants neglect to cite the next sentence of *Spry*, which states that the West Virginia Supreme Court of Appeals ("WVSCA") "has never addressed the issue directly." *Spry*, 2017 WL 440733, at 9. In *Spry*, this court expressed some reservations regarding the certainty of available remedies under Article III of the West Virginia Constitution. *See id.*

It is true though that this court has previously found that Article III provisions of the West Virginia Constitution do not provide a private cause of action for damages, with the exception of § 10. *See e.g., Howard v. Ballard*, No. 2:13-CV-11006, 2015 WL 1481836, at 4 (S.D. W. Va. Mar. 31, 2015) (holding Article III, § 5 does not independently give rise to claims for money damages); *McMillion-Tolliver v. Kowalski*, No. 2:13-CV-29533, 2014 WL 1329790, at 2 (S.D. W. Va. Apr. 1, 2014) (finding that "[w]ithout an independent statute authorizing money damages for violations of the West Virginia Constitution, the plaintiff's claim must fail."); *Smoot v. Green*, No. CIV.A. 2:13-10148, 2013 WL 5918753, at 5 (S.D. W. Va. Nov. 1, 2013) (finding "to the extent the claims under Article III [of the West Virginia Constitution] seek monetary relief, they be, and hereby are, dismissed."). I agree and find that a private plaintiff cannot bring a claim for damages under Article III, § 6 of the West Virginia Constitution when there is not an independent statute authorizing such a cause of action. The only relief plaintiffs request for this claim is money damages. Pls.' Comp.

¶ 25 [ECF No. 1]. Therefore, plaintiffs' claim brought pursuant to Article III, § 6 of the West Virginia Constitution fail as a matter of law. The Motion to Dismiss those claims is **GRANTED**.

### (2) Negligence (State Law Claims – Count II)

Defendants argue that the Negligence claims against defendant Deputies Casto, Fisher, DeWees, and Mellinger, should be dismissed because negligence is distinct from intentional torts. I agree. To succeed on a Negligence claim in West Virginia, a plaintiff must "show four basic elements: duty, breach, causation, and damages." *Hersh v. E-T Enterprises, Ltd. P'ship*, 232 W. Va. 305, 310, 752 S.E.2d 336 (2013) (abrogated by statute on other grounds). "A mere allegation of negligence does not turn an intentional tort into negligent conduct." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 780 (S.D.W. Va. 2015) (citations omitted). In other words, "[c]onduct that supports a negligence claim can be distinguished from conduct that supports an intentional tort claim by examining the subjective intent of the alleged tortfeasor." *Id.*; *see also Wilkes v. Raleigh Cty.*, No. 5:17-CV-03606, 2018 WL 1513004, at *4 (S.D.W. Va. Mar. 27, 2018). "Intentional torts, as distinguished from negligent or reckless torts . . . generally require that the actor intend the consequences of an act, not simply the act itself." *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (internal quotations omitted).

In this case, plaintiffs allege "[d]efendants failed to exercise reasonable care in hiring, retention, and/or supervision of their employees." Pls.' Compl. ¶ 27 [ECF No. 1]. Although plaintiffs bring this claim against "defendants," obviously the individual defendant Deputies did not hire, retain, or supervise employees. Therefore, the court construes the negligence claim (State Law Claims – Count II) to apply only to defendant Tony Boggs (the sheriff of Jackson County), and the Jackson County Commission. However, for the sake of extra clarity, plaintiffs have not

14

plead any facts that demonstrate negligence, as opposed to intentional torts, on the part of defendant Deputies Casto, Fisher, DeWees, and Mellinger. Therefore, the Motion to Dismiss the Negligence claim is **GRANTED** as to defendant Deputies Casto, Fisher, DeWees, and Mellinger.

IV. **Conclusion**

The court **GRANTS in part** and **DENIES in part** defendants' Motion to Dismiss. The court **DENIES** the Motion to Dismiss all claims against defendant Deputies and the Sheriff in their official capacities—though the court treats these claims as duplicative with the claims against the Jackson County Commission, as they are the same defendant. The court **DENIES** the Motion to Dismiss all claims against the Jackson County Sheriff's Department because the Department is not a party to the lawsuit. The Court **GRANTS** the Motion to Dismiss the *Monell* and Supervisory Liability claims brought pursuant to 42 U.S.C. § 1983 (Federal Law Claims – Count II). The Court **GRANTS** the Motion to Dismiss the Unlawful Conspiracy claims brough pursuant to 42 U.S.C. §§ 1983 and 1985 (Federal Law Claims – Count III). The Court **GRANTS** the Motion to Dismiss the constitutional tort claims brought pursuant to Article III, §§ 17 and 10, as well as to § 6 to the extent that the claims under § 6 are for monetary relief (State Law Claims – Count I). The Court **GRANTS** the Motion to Dismiss the Negligence claims (State Law Claims – Count II) against defendant Deputies Casto, Fisher, DeWees, and Mellinger.

For the sake of clarity, the following claims remain pending in this suit, at least until the motions for summary judgment are considered if filed: Negligence against the Jackson County Commission (State Law Claims – Count II); Battery (State Law Claims – Count III); Outrageous Conduct/ Intentional Infliction of Emotional Distress (State Law Claims – Count IV); and

Excessive Force and Illegal Seizure pursuant to 42 U.S.C. § 1983 (Federal Law Claims – Count I).

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 23, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE