IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MATTHEW NUTTER, et al.,

        Plaintiffs,

v.                                    CIVIL ACTION NO.  2:19-cv-00787

ROSS H. MELLINGER, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the Court is the Defendants' Motion for Summary Judgment [ECF No. 46].  The Plaintiff has responded [ECF No. 47] and the Defendants have replied [ECF No. 48]. The motion is now ripe for decision. This dispute involves an incident in which four Jackson County Sheriffs' Deputies entered Plaintiff Carrie Barnette's home without consent or cause, shoved her against a wall, and allegedly stomped on her foot. Once inside the house, the officers wrestled her guest, Plaintiff Matthew Nutter, to the ground, tased him at least twice, handcuffed him, and carried him out of the house. Mr. Nutter subsequently pled guilty to resisting arrest as a result of the incident. Ms. Barnette and Mr. Nutter filed their complaint asserting seven claims, of which I dismissed three. [ECF No. 1; ECF No. 16]. The claims that remain are Federal Law Count I—Illegal Seizure/Excessive Force Cognizable under 42 U.S.C. § 1983; State Law Count II—Negligent Hiring/Retention; State Law Count

1

III—Battery; and State Law Count IV—Intentional Infliction of Emotional Distress. [ECF No. 16].

Defendants have filed a Motion for Summary Judgment on all claims. For the reasons laid out more fully below, Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part.** With respect to Plaintiffs' Federal Law Count I, Mr. Nutter's conviction for resisting arrest necessarily bars him from brining a § 1983 claim on the same incident until his state law conviction has been invalidated by a state court. Therefore, Defendants' Motion for Summary Judgment on Federal Law Count I is **GRANTED** insofar as it applies to claims made by Mr. Nutter. Ms. Barnette's claims, however, can move forward. Defendants violated her clearly established rights and are therefore not entitled to qualified immunity. Defendants' Motion for Summary Judgment on Plaintiffs Federal Law Count I as it pertains to Ms. Barnette is **DENIED**.

Plaintiffs have failed to produce any evidence to support their negligent hiring/retention claims and therefore Defendant's Motion for Summary Judgment on Plaintiffs' State Law Count II: Negligence is **GRANTED.**

State law battery claims are analyzed under the Fourth Amendment reasonableness standard. Officers' use of force against Ms. Barnette was unreasonable under the Fourth Amendment, and therefore her claims can go forward. Because factual questions remain about the officers' use of force against Mr. Nutter, his state law battery claim can also go forward. Defendants' Motion for Summary Judgment on State Law Count III: Battery is **DENIED.**

Finally, under West Virginia law, intentional infliction of emotional distress claims are wholly duplicative of battery claims and therefore cannot move forward simultaneously. Accordingly, Defendant's Motion for Summary Judgment on Plaintiffs' State Law Count IV: Intentional Infliction of Emotional Distress is **GRANTED.**

## I.  Relevant Facts

On October 28, 2019, Plaintiffs Carrie Barnette and Matthew Nutter filed their Complaint [ECF No. 1] in relation to an encounter with Jackson County police officers in Ms. Barnette's apartment.

Ms. Barnette had agreed to move out of her apartment in the Rolling Meadow Housing Complex on April 5, 2019. [ECF No. 45-5 at 7–8]. On that day, the property manager, Allison Sayre,[1] was concerned that Ms. Barnette would not move out on time. At the same time, the defendant officers, Chief Deputy R.H. Mellinger, Deputy L.M. Casto, Deputy B.A. DeWees, and Deputy S.C. Fisher were at the Complex responding to an unrelated incident. When they finished, Ms. Sayre, who was with Woody Raines, the Complex's maintenance man, asked if the officers would accompany her to Ms. Barnette's apartment to make sure that Ms. Barnette was on track to move out. The officers agreed. [ECF No. 45-5 at 9-10].

---

[1] At the time of the incidence Allison Sayre was Allison Fields. She has since married and taken her husbands' name. Some of the incident reports refer to her as Ms. Fields and some of the depositions refer to her as Ms. Sayre. I will call her as Ms. Sayre.

From there, the narratives conflict. According to Ms. Barnette, the officers knocked on her door and asked why she had not moved out yet. Then, Deputy Casto stuck his head through the door and said something, at which point the rest of the officers piled in, shoving Ms. Barnette against the wall—hard enough to create a hole—and entered the apartment. [ECF No. 45-1, at 56–58]. The officers, on the other hand, say that Ms. Sayre gave them permission to go into the apartment. [ECF No. 45-4, at 10–11]. Ms. Sayre and Mr. Raines both say that Ms. Sayre never gave the officers permission to enter the apartment and that they weren't even present when the officers went in. [ECF No. 45-5, at 11; ECF No. 45-6, at 8–12].

Once the officers were in the apartment, again, accounts differ. The officers say they believed Mr. Nutter, who was asleep on the couch, to be in a medical emergency, so they tried to wake him and stand him up. Once they were able to get him to his feet, they started to frisk him, at which point he swore at them and swung at Deputies Fisher and Casto. [ECF No. 45-3; ECF No. 45-4, at 13–15]. According to Ms. Barnette, however, the officers saw Mr. Nutter on the couch and laughed him potentially needing medical assistance before they picked him up, threw him head-first against a recliner, and tried to handcuff him. Mr. Nutter, having woken up to men trying to handcuff him, "tensed up." [ECF 45-1, at 59–62]. Ms. Sayre and Mr. Raines were both outside and did not see most of the altercation. But Ms. Sayre says that she saw the officers standing over Mr. Nutter on the couch and that Mr. Nutter "smacked at" them while they were trying to wake him. [ECF No. 45-5, at 12].

4

However the initial contact with Mr. Nutter started, he resisted the officers' attempts to put him in handcuffs. The officers, to achieve their goal, tased Mr. Nutter an undetermined number of times,[2] wrestled him to the ground, and carried him out of the house. [ECF 45-4, at 14–24].

The Complaint initially asserted a total of seven claims against eight defendants. I have already dismissed several of the claims and defendants [ECF No. 16]. I also held that I will treat defendant Deputies, defendant Sheriff Boggs, and the Jackson County Commission as one defendant acting in an official, rather than individual, capacity. *Id.* Defendants now move for summary judgment on each of the remaining claims. I will address each individually.

## II. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The nonmoving party nonetheless must offer more than a mere "scintilla of evidence" in support of his position. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). He must offer some "concrete evidence from which a reasonable juror could return a verdict" in his favor. *Id.* at 256. Likewise, conclusory

---

[2] The officers say they tased him twice, while Ms. Barnette and Mr. Nutter claim he was tased more than twice. [ECF No. 45-4 at 19–21; ECF No. 45-2 at 72–73; ECF No. 45-1 at 78–79]

allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

## III.    Discussion

### A.    Federal Law Claims: Count I – Excessive Force and Illegal Seizure

Defendants argue that they did not violate Plaintiffs' constitutional rights, and if they did, they are entitled to qualified immunity. They further assert that Mr. Nutter's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Because the *Heck* doctrine does not apply to Ms. Barnette's claims, I will address each Plaintiff's claims separately.

#### 1.  Mr. Nutter's Federal Law Claims

The Supreme Court has held that a plaintiff cannot bring a claim under 42 U.S.C. § 1983 that, if successful, would imply the invalidity of a conviction arising from the same incident. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The *Heck* doctrine serves to avoid "two conflicting resolutions arising out of the same or identical transaction." *Id.* at 485. The plaintiff must, therefore, have the related conviction or sentence "reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 477.

Mr. Nutter pled guilty to one count of obstruction arising from the April 5, 2019 incident with police. He has not had that conviction overturned or invalidated. A

successful §1983 claim would imply that his obstruction conviction is invalid. As a result, I find that Mr. Nutter's claim is barred by the *Heck* doctrine. Defendants' motion for summary judgment on Mr. Nutter's § 1983 claim, Federal Law Count I is **GRANTED**.

Although Mr. Nutter's claims are barred because of his conviction for obstruction, Ms. Barnette has no such conviction. Ms. Barnette's claims, therefore, are not barred. I will now analyze whether defendants are entitled to summary judgment with respect to Ms. Barnette's Federal Law claims.

### 2. Ms. Barnette's Federal Law Claim

Ms. Barnette claims that Deputies Casto, Fisher, DeWees, and Mellinger pushed into her house without consent or reason, and that while in her house, they shoved her against the wall, threw her across the room, and purposefully stomped on her foot. Defendants argue that they are entitled to qualified immunity on Ms. Barnette's § 1983 claims because Ms. Barnette has failed to show that Defendants violated her clearly established rights.

The doctrine of qualified immunity protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The determination of whether a state official receives the benefit of qualified immunity is a two-step process. Viewing the facts in the light most favorable to the plaintiff, the court must decide (1) whether there was a constitutional violation, and (2) whether the right violated was clearly established

at the time of the violation. *Id.* at 231. A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731,741 (2011).

### i. Did officers unreasonably seize Ms. Barnette under 4th Amendment?

It is the "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). A seizure occurs whenever a police officer, either by physical force or show of authority, restrains a citizen's liberty. *Terry v. Ohio*, 392 U.S. 1, 19 (1968). All seizures must be supported by an officer's reasonable, articulable suspicion that something criminal is afoot. *United States v. Jones*, 678 F.3d 293, 299 (4th Cir. 2012) (quoting *Terry*, 392 U.S. at 21).

Not all police-citizen encounters are seizures under the Fourth Amendment. *Jones*, 678 F.3d at 299. To determine if a police-citizen encounter is a seizure, the court asks weather "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544,554 (1980). If a reasonable person would not feel free to terminate their encounter with the police, then the encounter is a seizure. *United States v. Stover*, 808 F.3d 991, 995 (4th Cir. 2015). Courts look to several factors to determine if a seizure has occurred, including the number of officers present, whether they were in uniform, touched the subject, treated the subject as if they suspected her

of illegal activity, or whether they treated the encounter as routine in nature. *Jones*, 678 F.3d at 300 (quoting *United States v. Gray*, 883 F.2d 320, 322–23 (4th Cir. 1989)).

Viewing the facts in the light most favorable to the plaintiff, which I am required to do at this stage of the litigation, it is clear that a seizure occurred. Four officers knocked on the door, and when Ms. Barnett answered, they shoved her aside—hard enough to leave a hole in the wall—and entered the apartment. They aggressively questioned her and ordered her to wake Mr. Nutter, who was asleep on the couch. In light of the factors outlined by the Fourth Circuit in *Jones*, a reasonable person in Ms. Barnette's situation would not feel free to end the encounter with the officers. The officers were not treating this encounter as a standard eviction notice,[3] but rather an excuse to find potential criminal activity.

### ii.   Was this a violation of clearly established law?

Defendants are entitled to summary judgment if their actions do not violate a plaintiff's clearly established rights. *Pearson v. Callahan*, 555 U.S. 223, 243–44 (2009). "The dispositive question is whether the violative nature of particular conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam). Conduct violates a clearly established right if "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Basically, the doctrine of qualified immunity serves to ensure that defendants had

---

[3] Though the officers' purpose in going to the house was to help make sure Ms. Barnette was moving out, there was not a formal eviction notice in place.

"fair warning that their alleged conduct was unconstitutional." *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

The Supreme Court has "repeatedly told courts. . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. Thus, courts consider whether a right is clearly established "in light of the specific context of the case, not as a broad general proposition." *Adams v. Ferguson*, 884 F.3d 219, 227 (4th Cir. 2018) (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). It is likewise important that when viewing the specific context of the case, the court construes the facts in the light most favorable to the plaintiff. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

This case requires me to decide whether it is clearly established under the law that police officers cannot, without a warrant or consent, enter a person's apartment, shove her into a wall, and subject her to aggressive questioning. I find that yes, it is clearly established.

It is the "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). Without a warrant, officers may only enter a home with the consent of someone with authority to grant access to the premises. *Georgia v. Randolph*, 547 U.S. 103, 109 (2006). It is clearly established that a landlord cannot validly give police permission to enter a tenant's apartment. *Chapman v. United States*, 365 U.S. 610, 616–17

(1961); *Georgia v. Randolph*, 547 U.S. 103, 111 (2006); *United States v. Stevenson*, 396 F.3d 538, 544–45 (4th Cir. 2005).

Here, Defendant Officers did not have a warrant and therefore needed consent to enter Ms. Barnette's apartment. Ms. Barnette did not give that consent. The officers claim that Ms. Sayre, the property manager, gave them consent to enter, though she disputes that claim. Even if she did, it is clearly established that she could not give the officers valid consent because the apartment was still leased by Ms. Barnette at the time. Officers, therefore, had no valid reason to enter the house, let alone shove Ms. Barnette against the wall or subject her to questioning inside the apartment. Defendants' Motion for Summary Judgment on Plaintiffs Federal Law Count I: Illegal Seizure is **DENIED.**

### iii. Did officers use excessive force against Ms. Barnette?

Excessive force occurs when an officer uses more force than is objectively reasonable in the situation. *Graham v. Connor*, 490 U.S. 396, 399 (1989). To determine whether the use of force was objectively reasonable, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake." *Id.* at 396. The inquiry is a fact specific one, analyzing factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Viewing the facts in the light most favorable to the plaintiff, as I am required to do at this stage in the litigation, I find that Deputy Mellinger used excessive force when, during the altercation with Mr. Nutter, he picked up Ms. Barnette—who was yelling that they might hurt her friend, but not impeding officers' actions—and threw her across the room, and likewise when he stomped on her foot.

Applying the *Graham* factors, I find that there was no objectively reasonable justification for throwing Ms. Barnette across the room or stomping on her foot. The first *Graham* factor—severity of the crime at issue—weighs heavily against the use of force. Ms. Barnette was not committing any crime, nor was she suspected of committing any crime. The second *Graham* factor—threat posed by the individual—also weighs against the use of force. Defendants present no evidence that they thought Ms. Barnette was a threat to the officers, herself, or others. The only potential indication that officers might have perceived Ms. Barnette as a threat is that she was screaming that they were hurting Mr. Nutter. Yet, Deputy DeWees—the only officer whose deposition is presented—says that he was not aware of Ms. Barnette after the altercation with Mr. Nutter started. Finally, the third *Graham* factor—any attempt to flee or resist arrest—again weighs strongly against the use of force. Ms. Barnette did not attempt to flee, nor was she impeding officers' efforts to subdue Mr. Nutter. In light of the fact that none of the *Graham* factors indicate that it was necessary to use force against Ms. Barnette, I find that Defendants violated her Fourth Amendment rights by throwing her across the room and stomping on her foot.

12

### iv.   Was this a violation of clearly established law?

When deciding if a law is clearly established, the court must define the right according to the specific facts of the case. *al-Kidd*, 563 U.S. at 742. While there does not need to be a case directly addressing the exact facts at issue, the unlawfulness of the officers' conduct must be "apparent" in the light of pre-existing law. *Anderson*, 483 U.S. at 640. Even though *Graham v. Connor* casts a high level of generality for excessive force claims, it can create clearly established law in obvious cases. *White v. Pauley*, 137 S. Ct. 548, 552 (2017).

The Fourth Circuit has found such "obvious cases" in situations where none of the *Graham* factors present a need for force. *See e.g. Turmon v. Jordan*, 405 F. 3d 202, 208 (4th Cir. 2005). In *Turmon*, the plaintiff claimed excessive force after the officer pointed a gun in his face, jerked him out of his motel room, spun him around and handcuffed him. *Id.* at 204. The Fourth Circuit found this use of force to violate a clearly established right because "there was no reasonable suspicion, no indication that the individual posed a threat to the officer, and no indication that the individual was attempting to resist or evade detention." *Id.* at 208. The court pointed out that it has found "such force to be proper only in situations in which there was at least reasonable suspicion to believe criminal activity was afoot." *Id.* (citing *Foote v. Dunagan*, 33 F. 3d 445, 449 (4th Cir. 1994), in which officers attempted to pull a murder suspect from an almost-stationary truck to prevent his escape).

With respect to Ms. Barnette's excessive force claims, and viewing the facts in the light most favorable to the plaintiff, the question is whether it is clearly

13

established that officer cannot, without belief that a person is a threat or committing a crime, throw her across a room or stomp on her foot. I find that it is.

This case, like *Turmon*, presents a situation in which the plaintiff posed no threat to the officers, was committing no crime, and was not resisting arrest or attempting to flee. As in that case, the officers here used physical force against Ms. Barnette, picking her up and throwing her across the room so hard that she broke a TV dinner table. The use of a weapon in *Turmon* does not sufficiently distinguish it from the case at hand, because the degree of force used does not matter when no force is justified at all. The officers therefore violated her clearly established right to be free from physical force when she posed no objectively reasonable threat and committed no crime. Defendants' Motion for Summary Judgment on Plaintiffs Federal Law Count I: Excessive Force is **DENIED.**

**B. State Law Claims: Count II – Negligent Hiring and Retention**

Negligent hiring and negligent retention differ slightly. To establish a claim of negligent hiring, the plaintiff must show that (1) the employer failed to conduct a reasonable investigation into the employee's background for issues that would make that person unfit for the job, and (2) that the employer could have reasonably foreseen the risk caused by hiring that person. *McCormick v. W. Va. Dep't of Pub. Safety*, 202 W. Va. 189, 193 (1998). To establish a claim of negligent retention, the plaintiff must show that (1) the employer knew of the employee's risky conduct yet failed to take action to stop it, and (2) that conduct resulted in harm to a third party. *Jones v. Martin Transp., Inc.*, No. 3:19-0373, 2020 WL 1802934, at *5 (S.D.W. Va. Apr. 8,

14

2020) (citing *State ex rel. W. Va. State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997)).

Inherent in both negligent retention and hiring claims is the relative risk of the employee's job. *McCormick*, 202 W. Va. at 507. For jobs that carry relatively high risk of harm to the community at large, the employer has an increased duty with respect to hiring and retaining employees. *Id.* Police officers, for example, perform inherently dangerous and risky jobs. They carry guns, tasers, batons, and handcuffs and are authorized to use them when necessary. Even still, the plaintiff must present some evidence that the officers had a propensity toward unnecessary violence and that the supervisors knew about it.

Here, plaintiffs have claimed that Sheriff Boggs failed to properly investigate, and later failed to fire, Chief Deputy Mellinger for a pattern of excessive force. Plaintiffs, however, have failed to support those claims with even a scintilla of evidence. Plaintiffs have not produced any evidence showing that Chief Deputy Mellinger has a pattern of excessive force while working for the Jackson County Sheriff's Department and no evidence that he had such a pattern prior to being hired. Furthermore, Plaintiffs fail to present any evidence that the Jackson County Commission or Sheriff Boggs knew or should have known of any potentially risky behavior by Chief Deputy Mellinger. Viewing the facts in the light most favorable to the nonmovant, plaintiffs' negligence claims against the Jackson County Commission and Sheriff Boggs fail. Defendants' Motion for Summary Judgment on Plaintiffs' State Law Count II—Negligence is therefore **GRANTED**.

### C.   State Law Claims: Count III – Battery

To establish a claim for battery, a plaintiff must show that (1) the defendant acted with intent to cause harmful or offensive contact, and (2) that harmful or offensive contact occurred. *W. Va. Fire & Gas Co. v. Stanley*, 602 S.E.2d 483, 494 (W. Va. 2004). A defendant can avoid liability for battery if he is otherwise privileged to engage in the complained of conduct. *Hutchinson v. W. Va. State Police*, 731 F. Supp. 2d 521, 547 (S.D. W. Va. 2010). For police officers, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Battery claims against police officers acting in their official capacity are therefore evaluated according the Fourth Amendment reasonableness standard. *Hutchinson*, 731 F. Supp. 2d at 547.

In this case, factual questions remain about the officers' conduct. The officers claim that they started wrestling with Mr. Nutter only after he swung at them. Ms. Barnette, on the other hand, claims that once they determined they could not wake him with verbal commands, they picked him up and slammed him head-first into the recliner. From there, they beat him, tased him, and then handcuffed him. Ms. Sayre, who was standing outside, says that she saw Mr. Nutter "swat at" the officers when they tried to wake him on the couch. Based on such conflicting narratives, I cannot appropriately assess the reasonableness of the officers' actions against Mr. Nutter, so I leave the question to the jury.

16

I addressed above the reasonableness of the force used against Ms. Barnette and concluded that it was unreasonable. Because the same analysis applies here, I will not repeat it. Because the officers were not privileged to use force against Ms. Barnette, her state law battery claim can move forward. Defendants' Motion for Summary Judgment on Plaintiffs' State Law Count III—Battery is, therefore **DENIED**.

### D.   State Law Claims: Count IV – Intentional Infliction of Emotional Distress

The Supreme Court of Appeals of West Virginia holds that a plaintiff cannot recover twice for a single injury. *Anderson v. Barkely*, No. 2:19-cv-00198, 2020 WL 7753290, at *3 (S.D. W. Va. Dec. 29, 2020) Accordingly, when an IIED claim arises from the same event as a battery claim, the two claims cannot simultaneously go forward. *Criss v. Criss*, 356 S.E.2d 620, 620 (W. Va. 1987). In fact, this court consistently dismisses IIED claims at the motion to dismiss and summary judgment stages when those claims arise from the same events as assault and battery claims. *See e.g.*, *Lilly v. Crum*, No. 2:19-cv-00189, 2020 WL 1879469, at *6 (S.D. W. Va. Apr. 15, 2020); *Pearson v. Thompson*, No. 2:19-cv-00321, 2019 WL 4145613, at * 2 (S.D. W. Va. Aug. 29, 2019); *Anderson v. Barkley*, No. 2:19-CV-00198, 2020 WL 7753290, at *3 (S.D. W. Va. Dec. 29, 2020).

Here, Mr. Nutter and Ms. Barnette's IIED claims arise from the same event as their battery claims: the officers' entry into the apartment without a warrant and their seizure of Mr. Nutter. Because the IIED claim is duplicative of the battery claim,

Defendants' Motion for Summary Judgment on State Law Count IV—Intentional Infliction of Emotional Distress is **GRANTED**.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part.** Defendants' Motion for Summary Judgment on Federal Law Count I as it pertains to Plaintiff Nutter's claims is **GRANTED**. Defendants' Motion for Summary Judgment on Federal Law Count I as it pertains to Plaintiff Barnette's claims is **DENIED**. Defendants' Motion for Summary Judgment on State Law Count II—Negligence is **GRANTED**. Defendants' Motion for Summary Judgment on State Law Count III—Battery is **DENIED**. Defendants' Motion for Summary Judgment on State Law Count IV is **GRANTED**. For clarity, the only remaining claims are Ms. Barnette's 42 U.S.C. § 1983 Illegal Seizure/Excessive Force claim (Federal Law Count I) and both Plaintiffs' battery claims (State Law Count III). The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      September 30, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE